FILED'06 SEP 08 15:13USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OREGON NATURAL DESERT ASSOCIATION,

        Plaintiff,

  vs.

DANA R. SHUFORD, Burns District
Manager, BLM, KARLA BIRD, Andrews
Resource Area Field Manager, JOAN
M. SUTHER, Three Rivers Resource Area
Field Manager, ELAINE M. BRONG,
State Director, Oregon/Washington
BLM, GALE A. NORTON, Secretary,
United States Department of the
Interior, U.S. BUREAU OF LAND
MANAGEMENT, and U.S. DEPARTMENT
OF THE INTERIOR,

        Defendants.

Civil No. 06-242-AA
OPINION AND ORDER

_____

Peter M. Lacy
Kristin F. Ruther
917 SW Oak Street, Suite 408
Portland, Oregon 97205

Stephanie M. Parent
10015 SW Terwilliger Bld.
Portland, Oregon 97219

Page 1 - OPINION AND ORDER

Attorneys for plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Stephen J. Odell
Assistant United States Attorney
1000 SW 3rd Ave, Suite 600
Portland, Oregon 97204-2902

Bradley Grenham
Special Assistant US Attorney
Office of the Regional Solicitor
500 NE Multnomah Street, Suite 607
Portland, Oregon 97232
    Attorneys for defendants

Ronald Yockim
430 SE Main Street
PO Box 2456
Roseburg, Oregon 97470
    Attorney for proposed defendant-intervenor
    Harney County

Elizabeth E. Howard
Dunn Carney Allen Higgins & Tongue LLP
851 SW Sixth Avenue, Suite 1500
Portland, Oregon 97204
    Attorney for proposed defendant-intervenor
    Steens Mountain Landowner Group, Inc.

Harold S. Shepherd
Center for Trial Water Advocacy
PO Box 1637
Pendleton, Oregon 97801
    Attorney for proposed plaintiff-intervenor
    Center for Tribal Water Advocacy

AIKEN, Judge:

    The parties filed six motions for this court's

consideration.  Oral argument on held on September 7, 2006.  The

motions are decided as follows:

(1) Harney County's Motion to Intervene - GRANTED IN PART (denied

as to liability phase, but allowed intervention in remedial phase, also allow participation in liability phase as amicus curiae).

(2) Steens Mountain Landowner Group's Motion to Intervene - GRANTED IN PART (denied as to liability phase, but allowed intervention in remedial phase, also allow participation in liability phase as amicus curiae).

(3) Tribal Water Advocacy's Motion to Intervene - GRANTED.

(4) Government's Motion to Stay - GRANTED.

(5) Plaintiff's Motion for Partial Summary Judgment - STAYED.

(6) Plaintiff's Motion to Consolidate - DENIED.

## FACTUAL BACKGROUND

In 2000, Congress enacted the Steens Mountain Cooperative Management and Protection Act of 2000 ("Steens Act), 16 U.S.C. §§ 460nnn-122, to provide for conservation and management of Steens Mountain.  Steens Mountain is a nearly 10,000 foot elevation mountain in the northern Great Basin in southeast Oregon. The Act created the 170,000 acre Steens Mountain Wilderness; added 29 miles to the federal Wild and Scenic River System; withdrew 1.1 million acres from mining and geothermal development; established a Wildlands Juniper Management Area for experimentation, education, interpretation and demonstration of juniper management and restoration of native vegetation of the Steen; and designated the nation's first Redband Trout Reserve.

Page 3 - OPINION AND ORDER

Id.

The Act also established the Cooperative Management and Protection Area (CMPA or "the Area"), a 496,000 acre area managed by the BLM on the Steens. Id. The purpose of the CMPA "is to conserve, protect, and manage the long-term ecological integrity of Steens Mountain for future and present generations." 16 U.S.C. § 460nnn-12(a).

On February 22, 2006, plaintiff Oregon Natural Desert Association (ONDA) filed the lawsuit at bar alleging that defendants Dana Shuford et al. ("BLM") violated federal environmental laws in a number of respects, in their adaption of the Andrews-Steens Resource Management Plan ("Andrews-Steens RMP"). See Complaint, ¶¶ 1-2. A resource management plan is a land use plan that establishes, for a particular area of public lands, allowable uses, land designations, goals for future condition of the land, program constraints and management practices, implementation requirements, intervals and standards for monitoring and evaluation of the plan, and specific next steps in management. See 43 C.F.R. § 1601.0-5(k); 43 U.S.C. § 1712.

Plaintiff alleges that the BLM violated its duties under the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4361, the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. §§ 1701-1784, the Public Rangelands Improvement Act (PRIA), 43

U.S.C. §§ 1901-08, the Taylor Grazing Act of 1934, 43 U.S.C.
§§ 315-315r, and the Steens Act, each actionable under the
Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706.
Plaintiff's allegations specifically allege the BLM's failure to:
(1) consider the environmental consequences of the proposed
action on the wilderness resource; (2) engage in a proper
multiple use balancing process as to the wilderness resource,
relying upon up-to-date and accurate inventory information, and
ensuring the proposed action will not cause "unnecessary or undue
degradation" to the public lands; (3) analyze a reasonable range
of alternatives with respect to lands allocated to, and
authorized levels of, domestic livestock grazing, as well as
lands designated as "closed" to off-highway vehicle use; (4)
assess or determine the suitability of the public lands for
grazing; (5) adopt a Transportation Plan within the time required
by Congress in the Steens Act; and (6) complete the
Transportation Plan as an integral part of the Andrews-Steens
RMP.  Complaint, ¶¶ 1-3.

  Plaintiff challenges the BLM's grazing allocation and off-
highway vehicle designation decisions as follows, the BLM failed
to: (1) satisfy NEPA's range of alternatives and "hard look"
requirements with respect to lands allocated to, and authorized
levels of, livestock grazing, as well as lands designated
"closed" to off-highway vehicle use; (2)  assess or determine the

Page 5 - OPINION AND ORDER

suitability of the public lands for grazing, as required by
FLPMA, the Public Rangelands Improvement Act, and the Taylor
Grazing Act; and (3) properly balance competing uses of the
public lands and their resources in a way that satisfied FLPMA's
multiple-use requirements.

## DISCUSSION

### MOTIONS TO INTERVENE

#### Standards Pursuant to Fed. R. Civ. P. 24(a), (b)

Intervention of right pursuant to Rule 24(a) requires the
satisfaction of a four-part test: (1) the applicant's motion must
be timely; (2) the applicant must assert an interest relating to
the property or transaction that is the subject of the action;
(3) the applicant must be so situated that without intervention
the disposition of the action may, as a practical matter, impair
or impede the applicant's ability to protect that interest; and
(4) the applicant's interest is not adequately represented by the
other parties. United States v. State of Oregon, 839 F.2d 635,
637 (9th Cir. 1988); and Northwest Forest Resource Council v.
Glickman, 82 F.3d 825, 836 (9th Cir. 1996). The burden is on the
intervener to establish that the requirements for intervention
are satisfied. Petrol Stops Northwest v. Continental Oil Co.,
647 F.2d 1005, 1010 n.5 (9th Cir. 1981).

Permissive intervention pursuant to Rule 24(b)(2) requires
that an applicant show the following: (1) its motion is timely;

Page 6 - OPINION AND ORDER

(2) it shares a common question of law or fact with the main action; and (3) the court has an independent basis for jurisdiction over the applicant's claims.  Donnelly v. Glickman, 159 F.3d 405, 412 (9th Cir. 1998)(internal citations omitted). The court has broad discretion in granting or denying permissive intervention.  Id.

(1) Harney County's Motion to Intervene

Harney County is a political subdivision of the State of Oregon.  Pursuant to Fed. R. Civ. P. 24(a), (b), Harney County requests leave to intervene as a defendant-intervenor in this action because it has "a significant interest in the wise and proper implementation of the [Steens Act]" in lands within Harney County.

Defendant does not object to Harney County's intervention. Plaintiff objects to Harney County's intervention and requests that this court allow the County leave to intervene only as to the remedial phase of this litigation.  I agree.

(1) Timeliness

Applying the test outlined above, I find that Harney County's motion is timely.  Under Rule 24(a), a court must consider: (1) the stage of the proceeding at the time intervention is sought; (2) the possible prejudice to the other parties from any delay in seeking intervention; and (3) the reasons for the length of any delay.  County of Orange v. Air

California, 799 F.2d 535, 537 (9th Cir. 1986), cert. denied, 480
U.S. 946 (1987).  This case was filed on February 21, 2006.
Harney County promptly held a public meeting under the Oregon
Public Meetings Law wherein it debated whether to intervene, and
subsequently drafted the motion to intervene.  Further, the court
notes Harney County's ability to comply with the court's
discovery and pretrial scheduling order including motions,
hearings and trial.  Finally, I note that plaintiff does not
contest the timeliness of Harney County's motion.

    (2)  Interest in Subject Matter

    A party may intervene as a matter of right if it is able to
assert an interest in the property or transaction that is the
subject of the action.  Here, Harney County asserts an interest
in the property within its boundaries, including the management
of federal and private lands within the Andrews Management Unit
and the Steens Mountain Cooperative Management and Protection
Area.

    Specifically, Harney County asserts that it has participated
in the land management planning for these lands and has
coordinated its own land use planning with these various plans at
issue.  Further the Steens Mountain Cooperative Management and
Protection Area Plan is premised, in part, upon the County
providing search and rescue, road management, and sheriff
services on the lands within or abutting the Area.  Finally,

pursuant to the Oregon system of land use planning, the County is responsible for coordinating its local plans with the federal plans and to protect water quality, scenic features, wildlife, fisheries and wild and scenic rivers on lands within the county.

I find that the County fails to establish a "significant protectable interest" which would allow intervention in this lawsuit. The rule in the Ninth Circuit regarding intervention is clear: when, as here, the claims in an environmental case go only to the government's compliance or non-compliance with its legal duties, the federal government is the only proper defendant in the liability phase of the case. See Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094 (9th Cir. 2002). There, the court considered whether the defendant-intervenors allowed by the district court were an appropriate party to defend an action by plaintiff against the federal government. The court held: "[a]s a general rule, the federal government is the only proper defendant in an action to compel compliance with NEPA." Id. at 1107-08. The rule is "based on the premise that private parties do not have a 'significantly protectable interest' in NEPA compliance actions." Id. at 1108. The court reasoned that NEPA and other environmental laws required action only by the government, and therefore only the government can be liable under those laws. Id. (internal quotation omitted).

///

Page 9 - OPINION AND ORDER

Moreover, that rule has been applied by the Ninth Circuit to state, county and city governments seeking intervention.  In Forest Conservation Council v. U.S. Forest Service, 66 F.3d 1489 (9th Cir. 1995), the court reaffirmed that the state and county could not "claim any interest that relates to the issue of the Forest Service's liability under NEPA and NFMA." Id. at 1495, 1499 n.11.  Similarly, in Churchhill County v. Babbitt, 150 F.3d 1072 (9th Cir. 1998), the court again applied the rule to city and county governments, reasoning that "because NEPA requires action only by the [federal] government, only the government can be liable under NEPA" and the city and county "cannot comply" with NEPA, therefore [they] cannot be defendants in a NEPA compliance action." Id. at 1082.  As here, the proposed Intervener in Churchhill County also argued at length that it had a "significantly protectable" interest in the underlying action. Despite those arguments, the court firmly held that the Intervener "does not have a 'significantly protectable' interest in federal government compliance or noncompliance with NEPA." Id.

The court accepts the County's assertions that it has responsibilities under state law to protect water quality, fish and wildlife, and other nature resources, however, that fact is irrelevant to whether the BLM complied with NEPA and other federal laws when it adopted the Andrews-Steens RMP.  Here, the

statutory provisions that form the basis of plaintiff's claims -
NEPA, FLMPA, PRIA, the Taylor Grazing Act, and the Steens Act -
regulate only the actions of the federal government.  The Acts
listed above do not impose any duties, rights or obligations on
private parties, including the County, nor do plaintiff's claims
implicate state or private lands.

(3),(4) <u>Adequate Representation of County's Interest</u>

The Ninth Circuit has held that in determining the adequacy
of representation, the following factors should be considered:
(1) whether the current party's interest is such that it will
undoubtedly make all of the intervenor's arguments; (2) whether
the current party is capable and willing to make such arguments;
and (3) whether the Intervener would offer any necessary elements
to the proceeds that other parties would neglect.  <u>People of the
State of California v. Tahoe Regional Planning Agency</u>, 792 F.2d
775, 778 (9th Cir. 1986).

The County argues that where the government is the
representative, "the requirement of inadequacy of representation
is satisfied if the applicant shows that representation of its
interests 'may be' inadequate and . . . the burden of making that
showing is minimal."  <u>United States v. Stringfellow</u>, 783 F.2d
821, 827 (9th Cir. 1986), <u>vacated and remanded on other grounds</u>,
107 S. Ct. 1177 (1987).

///

Here, the County asserts that the government cannot adequately represent its interests as its interests are broader than those of the federal defendants and cover the private lands as well as the federal lands within the external boundaries of the Area.  Further, the federal defendants do not share in the County's dependency upon federal grazing receipts nor in the County's obligations to provide transportation, land use planning, search and rescue, or sheriff patrols in and abutting the areas covered by the various land management plans.

The County specifically refers to its duties and powers under the State of Oregon's comprehensive land use planning. These duties and powers are not shared by the BLM and are unique to the County.  In managing the Area, the County argues that it is necessary to inquire into the manner in which the State of Oregon, and the County, regulate the private lands within the external boundaries of these Areas, a matter left exclusively to the states.  These areas cannot be effectively managed by the BLM alone and requires cooperation between the BLM, private landowners and the County.  Regulation of private lands with the Areas external boundaries is one of the responsibilities delegated to the County under the Oregon system of comprehensive planning.  See Affidavit of Steven R. Grasty (duty and power to conserve and protect the natural resources of the County, improve and protect the quality of Oregon's air, water and land

resources).

The court has no quarrel with the County's assertions outlined above, however, I find that the BLM will adequately represent the County's interests during the liability phase of this case.  During the liability phase, the County has the same interest as the BLM and any other member of the public: an interest in assuring that the federal defendants have complied with all applicable federal laws.  There is generally a presumption of adequate representation when the representative is a governmental body or officer charged by law with representing the interests of the public.  <u>Forest Cons. Council</u>, 66 F.3d at 1499.

Moreover, I note that in its Proposed Answer, Harney County has not asserted any affirmative or other defenses, or cross-claims.  The County's statement that its "interests are broader than those of the federal Defendants and cover private lands as well as federal lands[,] does not support a finding that the County's interests are not adequately protected.  Harney County's Brief, p. 11.  I agree, however, that during the remedial phase of this litigation there is a possibility that the interests of the BLM and the County may diverge.

Finally, I find that the County is not entitled to permissive intervention pursuant to Rule 24(b)(2).  I find no independent basis for jurisdiction over the County's claims, nor

has the County argued that the court has an independent basis for
jurisdiction over its claims.  <u>Donnelly</u>, 159 F.3d at 412
(internal citation omitted).

Regarding the requirement that there be a common question of
law or fact, again, the only issue in the liability phase of this
ligation is whether the BLM has complied with NEPA, FLPMA and
other federal statutes.  There is no dispute that only the BLM
can be held liable under these federal laws, and only the BLM can
be ordered to comply with the statutory provisions at issue.
Harney County fails to demonstrate that any legal position it
might advance concerning plaintiff's claims is any different than
the position advanced by the BLM.  <u>See</u> <u>Kootenai Tribe</u>, 313 F.3d
at 1111 (if "the would be intervenor's claim or defense contains
no question of law or fact that is raised also by the main
action, intervention under Rule 24(b)(2) must be denied.").

In conclusion, given the clear law of the Ninth Circuit on
this issue, Harney County's motion to intervene is granted in
part.  Harney County is granted intervention of right in the
remedial phase of this lawsuit, and denied intervention in the
liability phase of this lawsuit.  Harney County's alternative
Motion for permissive intervention is denied.  Further, Harney
County may file briefs and attend oral argument as amicus curiae
during the liability phase of the lawsuit.
///

Page 14 - OPINION AND ORDER

(2) <u>Steens Mountain Landowner Group's Motion to Intervene</u>

Steens Mountain Landowner Group (SMLG) is a non-profit association formed under the laws of the State of Oregon, on behalf of private landowners within the Steens Mountain Cooperative Management and Protective Area.  SMLG seeks to intervene in this lawsuit as a defendant-intervenor pursuant to Fed. R. Civ. P. 24 as a matter of right, and alternatively, move for permissive intervention. Defendants do not oppose this motion.

SMLG is comprised of 23 property owners with land located inside or adjacent to the Area.  Because their lands are intertwined with the Area lands, SMLG members access their private lands through the public lands in the Area.  Members also utilize the lands in the Area in conjunction with their private lands in order to support commercial livestock and commercial recreational businesses.  "SMLG members were key players in the cooperative process undertaken by Congressman Walden that led to the enactment of the Steens Act."  SMLG's Memo in Support, p. 3. "For example, a number of privately-held ranches exchanged land with the BLM in order to effectuate its enactment.  These compromises by private landowners are specifically recognized in the Act itself."  <u>Id.</u> (internal citations omitted).  "Since the enactment of the Steens Act, SMLG and its members have participated in, commented on and reviewed BLM's actions with

respect to the Steens Act and the [Area]."  Id.

SMLG argues that it must be granted full party status "not only to protect its economic interests but also to ensure that Plaintiff and BLM do not compromise the intent and goals of the Steens Act."  Id. at p. 4.

The court refers to and relies on the standards section outlined above to determine whether to allow intervention. Plaintiff does not contest the timeliness of SMLG's motion and the court finds that it was timely filed.

Regarding SMLG's "significantly protectable" interests related to the subject matter of this litigation, SMLG asserts that its members' livestock grazing and commercial recreation businesses rely on access to privately held property across public lands.  Further, SMLG argues that if that access is diminished, the value of SMLG members' property will be substantially diminished.  SMLG's Memo, p. 10.  Specifically, SMLG argues that if plaintiff prevails on its claims, "the practical outcome is that access to private land, grazing, and recreational uses would be restricted and constrained. Therefore, the resolution of these claims directly implicates SMLG's members' economic and real property interests, which were specifically protected by the Steens Act."  SMLG's Memo, p. 13. Finally, the SMLG asserts that "any reduction in grazing rights, commercial recreational use, or access to private lands will have

a negative impact on SMLG's members.  A ruling dismissing
Plaintiff's claims will allow SMLG's members to continue the
current level of use of public lands for these purposes.  Any
concessions by the BLM to resolve this dispute will impact SMLG's
members to the extent it lessens their use of public lands.
Therefore, as a practical matter, SMLG's members will be
substantially affected by the outcome in this case and are
entitled to intervene."  SMLG's Memo, p. 14.

SMLG fails to adequately discuss or distinguish any of the
many Ninth Circuit cases that mandate this court's ruling when
dealing with a private party requesting intervention in a NEPA or
FLMPA lawsuit against the government.  Instead, SMLG relies on a
case brought under the Clean Water Act (CWA), Sierra Club v. U.S.
Environmental Protection Agency, 995 F.2d 1478 (9th Cir. 1993).
There, the CWA established a scheme explicitly designed to permit
and thereby regulate the discharge of sewage sludge into
navigable waters of the United States.  Id. at 1485.  This scheme
protects the interests of persons who discharge sewage sludge
pursuant to such permits.  The proposed-intervenor (City of
Phoenix) had such a permit, and therefore the court found the
City had a "protectable interest" and allowed intervention.  Id.
SMLG asserts that the statutes at issue here also authorize
permits for use of public lands, SMLG members hold or own such
permits, and therefore SMLG has a "protectable interest"

sufficient to obtain intervention of right.

I disagree. Sierra Club specifically distinguished their facts precisely because the case was brought pursuant to the CWA. "The Clean Water Act does not principally regulate the EPA. It regulates private parties and state and local governments, such as the City of Phoenix." Id. at 1485. The court went on to note that it is "one thing to hold that only the government can be a defendant in a NEPA suit, where the statute regulates only government action, but quite another to exclude permit-holding property owners from a Clean Water Act suit, where the statute directly regulates their conduct." Id. Therefore, while the Ninth Circuit has allowed such intervention pursuant to the CWA, it has not allowed intervention pursuant to NEPA, FLMPA, and other similar federal Acts. As stated earlier, in challenges such as this which allege that the federal government has failed to comply with non-discretionary duties under federal statutes like NEPA and FLPMA, the Ninth Circuit has established a rule limiting intervention of right to "none but a federal defendant." Kootenai Tribe, 313 F.3d at 1108. See also, Wetlands Action Network v. U.S. Army Corps of Engineers, 222 F.3d 1105, 1114 (9th Cir. 2000)("Because a private party cannot violate NEPA, it cannot be a defendant in a NEPA compliance action.").

Further, I note that SMLG's economic interests based on its members' businesses and an interest in access to private property

do not qualify as "significant protectable interests" under Ninth
Circuit law.  See Ranchers Cattlemen Action Legal Fund United
Stockgrowers of Am. v. U.S. Dept. of Agric., 143 Fed. Appx. 751,
753 (9th Cir. 2005)("pure economic expectancy is not a legally
protected interest for purposes of intervention")(internal
citations omitted).  Specifically, because the decision to issue
grazing permits is discretionary by the BLM, and because those
federally-issued permits convey no "right, title, or interest, or
estate in or to the public lands," SMLG's members' economic
interests based on federally issued grazing permits are not a
"significant protectable interest."  43 U.S.C. § 315b.  This also
applies to individuals holding various "special recreation
permits" which allow them to conduct private commercial
operations on public lands.  This court has previously found that
status as special use permit holders, operating tours and other
commercial activities conducted in a wild and scenic river
corridor did not establish a protectable interest in a NEPA
action.  Riverhawks v. Zapeda, CV 01-3035-AA (D. Or. Aug. 23,
2001)(citing Wetlands Action Network, 222 F.3d at 1114).
Therefore, the SMLG's economic interest in ensuring its members'
commercial operations relying on federally-permitted use of the
public lands remains unchanged and that interest is not at issue
unless and until this action reaches the remedial phase.
///

Finally, I find no basis for SMLG's contentions that if plaintiff prevails on its claims, "the practical outcome is that access to private land, grazing, and recreational uses would be restricted and constrained."  None of the statutory provisions at issue in plaintiff's lawsuit or the relief requested by plaintiff affect the rights of private individuals to access their private lands.  Complaint, ¶¶ 44-78.

Alternatively, SMLG argues that it is entitled to permissive intervention pursuant to Rule 24(b)(2).  Again, I disagree.  As explained above, this court finds no independent basis for jurisdiction over SMLG's claims, with respect to the liability phase of the litigation.  Moreover, SMLG has not attempted to argue that the court has an independent basis for jurisdiction over its claims.  Further, regarding the necessity for a common question of law or fact, the only issue in the liability phase of this litigation is whether the BLM has complied with NEPA, FLPMA and other federal statutes.  Only the BLM can be held liable under these federal laws, and only the BLM can be ordered to comply with the statutory provisions at issue.  Therefore, I find that SMLG fails to demonstrate that any legal position it might advance concerning plaintiff's claims is any different than that of the BLM's.  Therefore, SMLG's alternative motion for permissive intervention is denied.

///

Page 20 - OPINION AND ORDER

In conclusion, based on the case law cited at length above, SMLG's motion to intervene as a matter of right is denied as to the liability phase, however, it is granted as to the remedial phase.  Further, SMLG may also participate in the liability phase of this lawsuit as amicus curiae by submitting briefs and attending oral argument.

    (3) <u>Center for Tribal Water Advocacy Motion to Intervene</u>

The Center for Tribal Water Advocacy (CTWA) moves to intervene as a plaintiff in this lawsuit.  Plaintiff ONDA does not object to the motion.  Defendants object to CTWA's intervention in this lawsuit.

CTWA is a non-profit Oregon public interest entity whose members use the Area and the lands covered by the Andrews RMP area for cultural, traditional, recreational, fishing, hunting and aesthetic pursuits.  CTWA Motion to Intervene, p. 3.  CTWA's approximately 100 members include Indian Tribe members located throughout the Pacific Northwest.  CTWA is headquartered in Pendleton, Oregon.  CTWA's mission is to "protect, defend, and restore forever, water right and water quality interests of Federally recognized Indian Tribes and their members."  CTWA's Memo in Support, p. 9.  CTWA asserts that "for the most part," its members are not members of plaintiff ONDA and "retain legal interest separate from the general public that are not representative of the ONDA membership."  CTWA's Reply, p. 4.

Page 21 - OPINION AND ORDER

CTWA's motion to intervene was timely filed.  Defendants do not contend otherwise.

CTWA filed a 24-page proposed complaint in intervention. Defendants object to CTWA's intervention "on the present record," arguing first that CTWA "has offered absolutely no arguments or rationales upon which it can even arguably demonstrate that it satisfies the criteria in [Rule 24]. . . . CTWA simply recites the test of the rule, but nowhere, in its motion or otherwise, does it articulate any reasons that ostensibly serve to establish that it has met the rule's standards."  Defendants' Response, p. 2.

Second, defendants object to CTWA's motion because

virtually the only factual evidence that CTWA offers in support of its motion is a four-paragraph affidavit of its own counsel . . .. [Moreover,] [t]he allegations that CTWA sets forth in its proposed complaint are not significantly or sufficiently specific or satisfactory in this regard . . . . Even taken collectively, the largely conclusory and overly vague averments and allegations that CTWA proffers in its moving papers fall well short of establishing a sound factual predicate for the necessary findings that, among other things, litigation of the claims without its participation stands to impair its ability to protect one or more legally protectable interests and that the original plaintiff, [ONDA], cannot adequately represent any such interests.

Defendants' Response, p. 2-3.

CTWA replies that in compliance with Rule 24, it attached to and filed with its motion to intervene its Complaint in Intervention which fully and thoroughly describes the basis for

Page 22 - OPINION AND ORDER

CTWA's standing, rights in intervention and sets forth its claims for which intervention is sought.  I agree that CTWA's proposed 24-page complaint in intervention adequately sets out each of the claims brought by CTWA against the defendant.  CTWA's motion to intervene as a plaintiff in this action is granted.

(4), (5) <u>Defendant's Motion to Stay and Plaintiff's Motion for Partial Summary Judgment</u>

Defendants move for a stay of plaintiff's motion for partial summary judgment on plaintiff's sixth claim for relief and request that plaintiff's motion be considered under the same dispositive motion briefing schedule as previously set by this court.

This court retains "inherent power to control the disposition of the causes on its docket in a matter which will promote economy of time and effort for itself, for counsel, and for litigants.  <u>CMAX, Inc. v. Hall</u>, 300 F.2d 265, 268 (9th Cir. 1962).  This  discretion includes postponing summary judgment on plaintiff's sixth claim until all of the claims can be considered together.

As already stated on the record during the hearing on these motions, defendants' motion to stay consideration of plaintiff's motion for partial summary judgment is granted. Plaintiff's motion for partial summary judgment is stayed. Plaintiff's motion for partial summary judgment will be considered along with the other summary judgment motions due October 20, 2006, and subject

Page 23 - OPINION AND ORDER

to the briefing schedule set by the court.

(6) <u>Plaintiff's Motion to Consolidate</u>

Plaintiff requests that the action at bar (<u>SHUFORD</u>) be consolidated with another pending action, <u>Oregon Natural Desert Association v. Gammon</u>, CV 06-523-HO (D. Or. filed April 21, 2006). Plaintiff-intervenor, CTWA, filed a "Reply in Support of Motion to Consolidate" joining in plaintiff's motion and brief.

In <u>Gammon</u>, both the Answer and Administrative Record have been filed, and dispositive motions are due November 7, 2006. Specifically, plaintiff requests that the court maintain separate schedules for briefing dispositive motions, but order that oral argument on cross-dispositive motions in both cases be consolidated into a single hearing.

As stated earlier, <u>Shuford</u> involves plaintiff ONDA's assertion that BLM violated federal environmental laws in their adoption of the Andrews-Steens Resource Management Plan. The <u>Gammon</u> lawsuit, filed by ONDA along with co-plaintiffs Oregon Natural Resources Council Fund and Northwest Environmental Defense Center, alleges similar violations concerning the BLM's adoption of the Lakeview Resource Management Plan and the Beaty Butte Allotment Management Plan.

STANDARDS

Fed. R. Civ. P. 42 provides:

When actions involving a common question of law or fact are pending before the court, it may order a joint

Page 24 - OPINION AND ORDER

hearing or trial of any or all of the matters in issue
in the actions; it may order all the actions consolidated;
and it may make such orders concerning proceedings
therein as may tend to avoid unnecessary costs or delay.

Id.

District courts have broad discretion in deciding whether to consolidate cases within the same district. Investors Research Co. v. U.S. Dist. Court, 877 F.2d 777 (9th Cir. 1989). Local Rule 42 provides that "[u]nless otherwise directed by the court consolidation and case Management of complex or related cases will usually be governed by the principals set forth in The Manual for Complex Litigation, Third." L.R. 42.1. The Manual states that actions "involving common questions of law or fact may be consolidated . . . if it will avoid unnecessary cost or delay." Manual § 21.631.

## DISCUSSION

Consolidation is only appropriate if there are common questions of law or fact. Plaintiff argues that each of these two actions allege that the BLM violated a number of federal environmental laws in adopting resource management plans (RMP) for neighboring several million-acre areas of public lands in southeast Oregon. A RMP is a land use plan that establishes, for a particular area of the public lands, allowable uses, land designations, goals for future condition of the land, program constraints and management practices, implementation requirements, intervals and standards for monitoring and

evaluation of the plan, and specific next steps in management. See 43 C.F.R. §§ 1601.0-5(k), 1712. The Gammon case also includes three claims directed at BLM's decision adopting the Beaty Butte allotment management plan (AMP). FLPMA provides that the BLM may prepare AMPs which are activity-level plans that "prescribe[] the manner in, and extent to which livestock operations will be conducted in order to meet multiple-use, sustained yield, economic and other needs and objectives. 43 U.S.C. § 1702(k). AMPs are "tailored to the specific range condition of the area: and are intended to "improv[e] the range condition of [those] lands." 43 U.S.C. § 1752(d).

In both cases, plaintiff argues that it "targets several core issues of concern," primarily under NEPA and FLPMA. Plaintiff's Memo in Support, p. 4. Plaintiff's primary complaint about the RMPs concern BLM's alleged violation of its statutory duties concerning management of public lands containing outstanding wilderness values. This concern gives rise to claims under two independent and district statutory duties: NEPA requires the BLM to take a "hard look" at the direct, indirect, and cumulative impacts of its decision on the wilderness resource; FLMPA establishes the BLM's duty to affirmatively balance the wilderness resource against the other valid "multiple uses" of the public lands to ensure its selected course of action will not cause "unnecessary or undue degradation," and to achieve

Page 26 - OPINION AND ORDER

that purpose by collecting and maintaining accurate, up-to-date
inventory information on wilderness and other resources.  42
U.S.C. § 4332(2)©); 43 U.S.C. §§ 1711(a), 1712©), 1732(a),(b).
Plaintiff acknowledges that the underlying facts are different in
both cases - the public lands at issue versus the timing of
wilderness inventories conducted - however, plaintiff argues that
both actions raise the same legal questions.

Plaintiff also asserts that both actions raise identical
legal questions concerning the BLM's grazing allocation and off-
highway vehicle designation decisions.  Specifically, plaintiff's
claims allege that the BLM: (1) failed to satisfy NEPA's range of
alternatives and "hard look" requirements with respect to lands
allocated to, and authorized levels of, livestock grazing, as
well as lands designated "closed to off-highway vehicle use;" (2)
did not assess or determine the suitability of the public lands
for grazing, as required by FLPMA, the Public Rangelands
Improvement Act, and the Taylor Grazing Act; and (3) did not
properly balance competing uses of the public lands and their
resources in a way that satisfied FLPMA's multiple-use
requirements.

Plaintiff acknowledges that both actions contain claims that
are distinct from the other.  Shuford contains two claims (six
and seven) under the Transportation Plan provision under the
Steens Mountain Act.  In the Gammon case, there are three claims

Page 27 - OPINION AND ORDER

related to the BLM's decision adopting the Beaty Butte AMP.

The Manual for Complex Litigation states: "[w]hether consolidation is permissible or desirable will depend in large part on the extent to which the evidence in the cases is common." Manual at § 21.631. Unless common evidence predominates, consolidation may lead to confusion while failing to improve efficiency. Id. Plaintiff acknowledges that the challenged agency decisions in these two actions will rely upon separate administrative records, therefore, "common evidence does not predominate." Plaintiff's Memo in Support, p. 6. Plaintiff then states the lack of common evidence between the two cases is the "main reason" why plaintiff recommends separate briefing schedules "with the possibility of a consolidated hearing following completion of briefing in both cases." Id. at 6-7. Finally, plaintiff notes that consolidating lodging of the administrative record and/or briefing on the merits in these two actions "would not be efficient due to the sheer magnitude of the record (estimated to be on the order of 20,000 pages in each action) and the briefing." Id. at p. 8, n.2 (emphasis in original).

Defendants object to consolidation, with the SMLG filing a separate brief in opposition. Defendants point to Oregon Natural Desert Ass'n v. USFS, 2004 WL 1293909 (D. Or. June 10, 2004), where the Forest Service filed a motion to consolidate a related

case pending in the District of Oregon.  Plaintiff ONDA opposed
the motion.  The court denied defendant Forest Service's motion
to consolidate in part because ONDA's claims under the National
Wild and Scenic Rivers Act (WSRA) in the first case were not
present in the second case.  Further, ONDA's claims under the
National Forest Management Act in the second case were not
present in the first case.  Although both cases contained similar
claims under NEPA and the Rescissions Act, the court nonetheless
determined that the plaintiff's allegations under the WSRA were
central to the action, and denied the motion to consolidate.
Defendants argue that is the situation at bar.  Defendants assert
that Shuford presents distinct legal issues under the Steens Act,
other claims are highly fact-dependent, and the pure legal issue
has already been litigated.  Specifically, defendants argue that
plaintiff's claims under the Steens Act are central to the
Shuford case.  The Steens Act is unique to the area at issue.
These claims are not present in the Gammon case.  Similarly, the
Gammon case involves claims regarding the Beaty Butte AMP that
are legally distinct from the claims in our case.  In fact,
plaintiff does not challenge any allotment management plans in
Shuford.  Like the WSRA claim in ONDA v. USFS, the Steens Act
claims are central to Shuford, and the specific legal duties
imposed by the WSRA in ONDA v. USFS are similar to the specific
duties imposed on the BLM in the Steens Act with respect to the

Steens Mountain Area.  Therefore, defendants assert that because the Steens Act is unique to the area at issue in <u>Shuford</u> and that claim is central to the case, consolidation is not appropriate.

While defendants acknowledge that plaintiff's NEPA and FLMPA claims in both cases are similar, defendants point out that resolution of those claims is highly fact dependent and will turn on specific facts contained in different Administrative Records.

Defendants also assert that consolidation is inappropriate because the legal question at issue in both cases has already been litigated and decided by Judge Jelderks.  Plaintiff's fourth claim for relief in <u>Shuford</u> and fifth claim for relief in <u>Gammon</u> both assert that the BLM has violated the Taylor Grazing Act by failing to determine whether the public lands at issue are "chiefly valuable" for grazing.  Judge Jelderks found that claim was nonjusticiable.  <u>ONDA v. BLM</u>, CV 03-1017-JE, 2005 WL 711663 (D. Or. March 29, 2005)(determining that plaintiffs' claims under FLMPA and the Taylor Grazing Act were not justiciable).

As noted above, the Manual counsels whether consolidation is permissible or desirable depends "in large part on the extent to which the evidence in the cases is common."  Here, there is little common evidence between the two cases.  The cases refer to completely different RMPs, different areas of land, and the areas are located in different BLM districts.  Further, the administrative record in each of the cases is distinct because

Page 30 - OPINION AND ORDER

many of the determinations, such as the effects of grazing or off-highway vehicle use, are highly site-specific. Finally, relying on the precedent in <u>ONDA v. USFS</u>, cited above, evidence of BLM's compliance with Steens Act duties will not be relevant to the allegations made in <u>Gammon</u>.

Finally, consolidation will likely cause unnecessary cost and delay because the administrative record in each case is indisputably voluminous. The administrative record in our case, according to defendants, consists of "upwards of thirty thousand pages." Even plaintiff recognizes that the two cases are so distinct that separate administrative record filings, and separate briefing schedules on cross-motions for summary judgment would be necessary. The only portion that plaintiff believes should be consolidated is "possibly" the hearing on dispositive motions. Given the fact-dependent nature of the NEPA and FLMPA claims, it is unlikely that consolidation will lead to increased efficiency in reviewing the records.

Plaintiff's motion to consolidate is denied.

<b><u>CONCLUSION</u></b>

The motions at bar are ruled on as follows:

Harney County's and SMLG's motions to intervene (docs. 28,33) are denied as to the liability phase, but granted as to the remedial phase. These parties are also allowed to participate in the liability phase as amicus curiae.

The Center for Tribal Water Advocacy's motion to intervene (doc. 67) is granted.

The government's motion to stay (doc. 77) is granted. Plaintiff's motion for partial summary judgment (doc. 17) is stayed and will be considered with other dispositive motions filed pursuant to the briefing schedule set by this court.

Finally, plaintiff's motion to consolidate (doc. 51) is denied.

IT IS SO ORDERED.

Dated this _8_ day of September 2006.



_Ann Aiken_
Ann Aiken
United States District Judge

Page 32 - OPINION AND ORDER